[Cite as *State v. Lux*, 2012-Ohio-112.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

STATE OF OHIO                                        :

    Plaintiff-Appellee                         :            C.A. CASE NO. 2010 CA 30

v.                                                              :            T.C. NO.    09CR521

CURTIS R. LUX                                      :            (Criminal appeal from
                                         Common Pleas Court)

    Defendant-Appellant              :

                                      :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____13th_____ day of _____January_____, 2012.

. . . . . . . . . .

JAMES D. BENNETT, Atty. Reg. No. 0022729, Assistant Prosecuting Attorney, 201 West Main Street, Safety Building, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

MARK A. DETERS, Atty. Reg. No. 0085094, 371 West First Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}   Curtis R. Lux was convicted of gross sexual imposition after a jury trial in the Miami County Court of Common Pleas.   The trial court sentenced him to one year in prison and ordered him to pay court costs.   Lux appeals from his conviction and sentence, raising three assignments of error.   We will address them in an order that facilitates our analysis.

I

**{¶ 2}** Lux's second assignment of error states:

**{¶ 3}** "APPELLANT'S CONVICTION IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶ 4}** In his second assignment of error, Lux claims that his conviction was based on insufficient evidence and was against the manifest weight of the evidence.

**{¶ 5}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560 (1979). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

**{¶ 6}** In contrast to the sufficiency of the evidence standard, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the

evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 7}   Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses.   *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).   However, we may determine which of several competing inferences suggested by the evidence should be preferred.   *Id.*

{¶ 8}   The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence.   *Wilson* at ¶ 14.   A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances.   *Martin*, 20 Ohio App.3d at 175.

{¶ 9}   The State's evidence at trial reveals the following facts:

{¶ 10} On October 30, 2009, twelve-year-old Brittany spent the evening with her friends, D.B. and J.B., who are sisters.   Brittany told her mother that she would spend the night at D.B. and J.B.'s home, while the sisters told their parents that they planned to spend the night at Brittany's house.   In fact, the girls planned to meet one of D.B.'s friends and to stay at that girl's house, but D.B.'s friend failed to meet them at the prearranged location. The girls tried, unsuccessfully, to find another friend to stay with.   Brittany ultimately

suggested that they go to Lux's house. (Lux knew Brittany's sisters.) At the time, Lux was 36 years old.

{¶ 11} When Lux answered his door, Brittany told him that they did not have anywhere to stay and she asked him if they could stay at his house. Lux responded that they could sleep in his van, and he unlocked the vehicle for them. Lux later brought the girls some snacks, water, and blankets. J.B. got into the front passenger seat, D.B. took the middle bench seat, and Brittany got into the rear seat of the van. Lux got into the rear seat with Brittany.

{¶ 12} According to Brittany's testimony at trial, at some point, Lux "got vertically on top of me and *** started kissing my neck." Lux put his hand under Brittany's shirt, unbuttoned and unzipped her blue jeans, and put his hand down her pants. Lux rubbed Brittany's "vaginal area." After Lux pulled his hand away, Brittany rolled over and later fell asleep. J.B. testified that she saw Lux and Brittany tickling each other, and D.B. heard Brittany and Lux "giggling and talking;" neither sister saw any sexual activity between Brittany and Lux.

{¶ 13} In the morning, the girls went to the sisters' house. Brittany told J.B. that she had "made out" with Lux; J.B. told D.B., who told her mother. J.B. and D.B.'s mother contacted the police.

{¶ 14} On November 1, 2009, Brittany was interviewed at her home by Troy Police Officer Joel Misirian. Brittany was hostile to the officer, and she told him that Lux "was just kissing my neck." Brittany denied that any other sexual activity had occurred.

{¶ 15} After leaving Brittany's home, Officer Misirian talked with Lux at his

residence. Lux told the officer that the three girls had come to his house and appeared to be scared. Because he lives with his mother, Lux was not able to have them stay in the house and he offered to let them stay in his van. Lux indicated that he sat in the back of the van with Brittany while the other girls sat near the front. Lux said that Brittany kissed him and he kissed her back. Lux further said that Brittany let him touch her breasts and underwear and that Brittany tried to guide his hand down her pants. Lux admitted that he had touched her vaginal area, but denied that he had penetrated Brittany with his hand.

{¶ 16} After the interview, Officer Misirian contacted Detective Alex Hillman, who advised the officer to ask Lux if he would be willing to come to the police station for a further interview. Lux agreed, and Misirian drove Lux to the station. Detective Hillman interviewed Lux, and Lux made statements consistent with his conversation with Officer Misirian. A videotape of Hillman's interview with Lux was shown to the jury.

{¶ 17} The following day, Brittany was interviewed at the police station by Detective Alex Hillman and a victim advocate named Carmen. Brittany reiterated that Lux had kissed her neck, but denied that any other sexual activity had happened. During defense counsel's cross-examination of Brittany, a portion of the videotape of this interview was played for the jury. Brittany testified that she subsequently testified for a grand jury, during which she stated that Lux had kissed her and put his hand down her pants.

{¶ 18} Lux testified on his own behalf at trial. He stated that the girls had come to his housing looking for a place to spend the night, and he agreed to let them stay in his van. Lux indicated that he sat in the back with Brittany, that she slapped him playfully, and he tickled her to get her to stop. Afterward, they all fell asleep. Lux further testified that he

awoke to the feeling of "being messed with." He felt Brittany kiss him and grab his hands. Lux denied that he touched Brittany for his or her sexual gratification. Lux stated that, once he realized what was happening, he sent the girls home.

{¶ 19} Based on the evidence, Lux was convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(4). That statute provides: "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: *** (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 20} Upon review of the record, the State presented sufficient evidence to support Lux's conviction. According to the State's witnesses, Brittany was 12 years old on October 30, 2009. Brittany testified that Lux kissed her on her neck and touched her breasts and pubic area. Officer Misirian and Detective Hillman both testified that Lux confessed to kissing Brittany, touching her breasts, and her vaginal area, and Lux's videotaped statements to Detective Hillman at the police station, which were consistent with the officers' testimony, were played for the jury. Although there was no direct evidence that Lux touched Brittany for the purpose of sexually arousing or gratifying himself or Brittany, Brittany's testimony and Lux's statements to the officers supported such an inference.

Viewed in the State's favor, there was ample evidence to support Lux's conviction for gross sexual imposition.

{¶ 21} Lux further claims that the jury lost its way and created a manifest injustice when it found him guilty of gross sexual imposition. The credibility of the witnesses and the weight to be given to their testimony were matters for the jury to determine. The jury did not lose its way simply because it chose to believe the State's version of the events, which it had a right to do. Although Lux testified at trial that Brittany had kissed him and grabbed his hands and that he did not touch her for the purpose of sexual gratification, the evidence, including Lux's interview with Detective Hillman, would allow a reasonable jury to conclude that Lux was a willing participant in the sexual contact and that he received sexual arousal or gratification from their sexual behavior. Reviewing the record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. Lux's conviction was not against the manifest weight of the evidence.

{¶ 22} The second assignment of error is overruled.

II

{¶ 23} Lux's third assignment of error states:

{¶ 24} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 25} In his third assignment of error, Lux claims that his trial counsel rendered ineffective assistance when he failed to file a motion to suppress Lux's statements to the police.

{¶ 26} We review claims of ineffective assistance of counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 688. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Id.*

{¶ 27} Lux claims that he should have been informed of his *Miranda* rights by Officer Misirian before being transported to the police station, because the officer had probable cause to arrest him. Lux further claims that his statements to Detective Hillman should have been suppressed because they were obtained in violation of *Miranda*. Lux asserts that his counsel acted deficiently when he failed to raise these issues.

{¶ 28} In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the State may not use statements stemming from a defendant's custodial interrogation unless it demonstrates the use of procedural safeguards to secure the defendant's privilege against self-incrimination. *Id.* at 444. Police are not required to give *Miranda* warnings to every person that they question, even if the person being questioned is a suspect. *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997). Instead, *Miranda* warnings are only required for custodial interrogations. *Id.*

{¶ 29} "Custodial interrogation" means questioning initiated by the police after the

person has been taken into custody or otherwise deprived of his freedom in any significant way. *State v. Wilson*, 2d Dist. Montgomery No. 22665, 2009-Ohio-1279, ¶ 18, citing *State v. Steers*, 2d Dist. Greene No. 89-CA-38, 1991 WL 82974 (May 14, 1991). In order for a defendant's statements made during a custodial interrogation to be admissible, the State must establish that the accused knowingly, voluntarily, and intelligently waived his or her rights. *Miranda,* supra; *State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976), overruled on other grounds, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

{¶ 30} Based on the record before us, we find no indication that Lux was in custody when he was questioned by Officer Misirian or by Detective Hillman. Officer Misirian's testimony at trial reflects that the officer went to Lux's home and that Lux voluntarily agreed to speak with him. They spoke on Lux's front porch. Nothing suggests that Lux was restrained in any way or that he was threatened or otherwise coerced by, or under the control of, the officer. Officer Misirian further testified that he had asked Lux if Lux "would be willing to come to the police department for a further interview." Misirian stated that Lux agreed and Misirian "transported him as a courtesy ride" to the police station. There is no evidence that Lux was in custody when he was transported to the Troy police department.

{¶ 31} Lux made incriminating statements to Officer Misirian during their conversation, which may have provided probable cause for Lux's arrest, but the existence of probable cause did not convert Lux's voluntary conversation with the officer to a custodial interrogation. "The determination whether a custodial interrogation has occurred requires an inquiry into 'how a reasonable man in the suspect's position would have understood his situation.'" *State v. Estepp*, 2d Dist. Montgomery No. 16279, 1997 WL 736501 (Nov. 26,

1997), quoting *Biros*, 78 Ohio St.3d at 440. Neither an officer's subjective intent nor the defendant's subjective belief is relevant to the determination of whether an individual is in custody for purposes of *Miranda*. *State v. Gaddis*, 2d Dist. Montgomery No. 24007, 2011-Ohio-2822, ¶ 18; *State v. Severt*, 2d Dist. Montgomery No. 24074, 2010-Ohio-5389, ¶ 15.

{¶ 32} Upon his arrival at the police station, Lux was interviewed by Detective Hillman. Even assuming that Lux was in custody during that interview, there is no support in the record for Lux's assertion that he made statements to Detective Hillman in violation of *Miranda*. The videotape of Hillman's interview with Lux shows that Hillman began the interview by giving *Miranda* warnings to Lux. Lux indicated that he understood each of his rights and that he was willing to talk with the detective. Lux signed a waiver of rights form.

{¶ 33} The fact that Lux had previously made incriminating statements to Officer Misirian prior to Detective Hillman's notification of Lux's *Miranda* rights did not render Lux's statements inadmissible under *Missouri v. Siebert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). Lux's prior statements to Misirian were given voluntarily in a non-custodian context. This case does not involve the "question-first, Mirandize-later" interrogation practice that *Siebert* aimed to remedy. *Accord State v. Sosnoskie*, 2d Dist. Montgomery No. 22713, 2009-Ohio-2327, ¶ 62 (concluding that, "[b]ecause the detectives were not obliged to read Sosnoskie his *Miranda* warnings prior to the first confession, the absence of those warnings do not affect the voluntariness of the second confession, given several days later, after Sosnoskie waived his *Miranda* rights.")

{¶ 34} Accordingly, we find no basis to conclude that Lux's statements to the police

would have been suppressed had a motion to suppress been filed. The record does not support a claim of ineffective assistance of counsel due to counsel's failure to file such a motion.

{¶ 35} Lux's third assignment of error is overruled.

III

{¶ 36} Lux's first assignment of error states:

{¶ 37} "APPELLANT'S SENTENCE IS VOID."

{¶ 38} In his first assignment of error, Lux claims that his sentence is void for three reasons. First, he asserts that his "sentencing" is void, because the judgment entry indicates that he was classified as a sex offender under R.C. 2950.09 and 2950.01(E). Second, Lux argues that the trial court improperly ordered him to pay court costs. Third, he claims that the trial court did not properly notify him about post-release control.

{¶ 39} On April 12, 2010, Lux was brought before the trial court for "a 2950 hearing and also for sentencing." The trial court informed Lux that he was convicted of "a sexually oriented offense by statute. *** [I]t's a tier two offense[.]" The court told Lux of his obligations as a Tier II sex offender and stated that a failure to comply with the requirements could result in a separate felony charge. Lux signed a form which acknowledged that he had been informed about his Tier II classification.

{¶ 40} The court then proceeding with Lux's sentencing. The court heard from defense counsel, the prosecutor, and Lux, and it indicated that it had reviewed the presentence investigation report. The court stated that it considered "the purposes and principles of the sentencing statutes and all the factors of record" and weighed the recidivism

and seriousness factors. The court concluded that Lux was not amenable to community control, and it sentenced him to one year in prison and to pay court costs. The court further informed Lux that he was subject to a mandatory five years of post-release control and told him of the consequences if he violated post-release control.

A. *Sex Offender Classification*

{¶ 41} Lux raises that the caption of the judgment entry states, "Entry Determination Hearing Pursuant to R.C. 2950.09 and Imposition of Sentence," and the entry indicates that his tier classification was pursuant to R.C. 2950.01(E). Lux argues that R.C. 2950.09 had been repealed prior to his classification hearing and that R.C. 2950.01(E) defines Tier I – not Tier II – sex offenders.

{¶ 42} Lux is correct that R.C. 2950.09 had been repealed and that R.C. 2950.01(E) defines Tier I sex offenders. Nevertheless, the trial court was required under the current version of R.C. Chapter 2950 to classify Lux as a sex offender, and the court properly notified Lux that he was required to registered as a Tier II sex offender. See R.C. 2950.01(F). The improper statutory citations in the judgment entry were, perhaps, typographical errors or from an old form, which amounted to harmless error. The errors in the statutory citations may be corrected with a nunc pro tunc entry.

B. *Court Costs*

{¶ 43} Next, Lux asserts that he was improperly ordered to pay court costs. He argues that the court failed to consider his present and future ability to pay in accordance with R.C. 2929.19(B)(6), to specify the amount of costs at sentencing, and to provide certain notifications under R.C. 2947.23(A)(1).

{¶ 44} R.C. 2929.19(B)(6) requires the trial court to consider defendant's present and future ability to pay before imposing any financial sanction under R.C. 2929.18. *State v. Twitty*, 2d Dist. Montgomery No. 24296, 2011-Ohio-4725, ¶ 23. Financial sanctions include, for example, restitution, fines, and reimbursement of the costs of community control sanctions, confinement, or monitoring devices. R.C. 2929.18.

{¶ 45} Court costs are governed by R.C. 2947.23. Court costs are not financial sanctions. *State v. Smith*, 3d Dist. Allen No. 1-07-32, 2007-Ohio-6552, ¶ 11. Consequently, R.C. 2929.19 is inapplicable to court costs, and the trial court need not consider a defendant's ability to pay under R.C. 2929.19 prior to imposing court costs. E.g, *id.*; *Columbus v. Kiner*, 10th Dist. Franklin No. 11AP-543, 2011-Ohio-6462.

{¶ 46} Under R.C. 2947.23, a trial court is required to impose court costs against all convicted defendants, even those who are indigent. See *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. However, "despite the mandatory language *** requiring the imposition of court costs, a trial court may waive the *payment* of costs." (Emphasis in original.) *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 11. It is also possible that, during the collection process, the clerk of courts may waive the collection of court costs for indigent defendants. See *White* at ¶ 14 (noting that R.C. 2929.14 was silent as to the collection of costs from indigent defendants).

{¶ 47} A defendant seeking a waiver of the payment of court costs must move for such a waiver at sentencing. *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164; *State v. Stutz*, 2d Dist. Montgomery No. 24489, 2011-Ohio-5210, ¶ 16. The trial court, however, has no duty to waive court costs, and R.C. 2949.092 does not provide

standards for such waiver. Id, citing *State v. Costa*, 2d Dist. Greene No. 99 CA 14, 1999 WL 957647 (Sept. 3, 1999). An appellate court reviews the denial of a motion to waive payment of court costs under an abuse of discretion standard.

{¶ 48} Lux did not request a waiver of the payment of court costs at sentencing. Accordingly, he cannot challenge the imposition of court costs on direct appeal.

{¶ 49} Moreover, the court's imposition of court costs is not erroneous due to the court's failure to specify the amount of court costs at sentencing. (The judgment entry imposes costs in the amount of $1,964.34.) The calculation of the amount of court costs is a ministerial act. *Threatt* at ¶ 21. Thus, we have held that the failure to specify the amount at sentencing does not affect the order's finality and the itemized bill may be calculated later. *State v. Murillo*, 2d Dist. Montgomery No. 21919, 2008-Ohio-201, ¶ 14.

{¶ 50} Lux asserts that the trial court's imposition of court costs was nevertheless erroneous, because the court did not notify him that any failure to pay court costs could be addressed by an order to perform community service, pursuant to R.C. 2947.23(A)(1). R.C. 2947.23(A)(1) provides:

{¶ 51} "*** At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following:

{¶ 52} "(a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

**{¶ 53}** "(b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount."

**{¶ 54}** The trial court did not provide these notifications to Lux at the sentencing hearing, and the failure do to so was contrary to the statute. The Ohio appellate districts are split, however, as to whether we can review the lack of notification on direct appeal. Several appellate districts have held that the issue is not ripe for adjudication until the defendant has failed to pay court costs and the trial court has ordered the defendant to perform community service. E.g., *State v. Gates*, 11th Dist. Portage No. 2011-P-0001, 2011-Ohio-5711; *State v. Barkley*, 185 Ohio App.3d 686, 2009-Ohio-5549, 925 N.E.2d 626 (10th Dist.); *State v. Kearse*, 3d Dist. Shelby No. 17-08-29, 2009-Ohio-4111; *State v. Nutter*, 12th Dist. Brown No. CA2008-10-009, 2009-Ohio-2964.

**{¶ 55}** On the other hand, other appellate districts have addressed the matter and found the failure to provide the notice required by R.C. 2947.23 to be prejudicial error. E.g., *State v. Adams*, 8th Dist. Cuyahoga No. 95439, 2011-Ohio-2662; *State v. Ruby*, 6th Dist. Sandusky No. S-10-028, 2011-Ohio-4864; *State v. Moss*, 186 Ohio App.3d 787, 2010-Ohio-1135 (4th Dist.); *State v. Gabriel*, 7th Dist. Mahoning No. 09 MA 108, 2010-Ohio-3151*; State v. Dansby*, 5th Dist. Tuscarawas No. 08 AP 06 0047, 2009-Ohio-2975. Such courts have either vacated the order to pay costs and remanded for resentencing, e.g., *Adams*, supra, or modified the sentence such that the trial court cannot order community service for the failure to pay court costs, e.g., *Gabriel*, supra.

{¶ 56} The Ohio Supreme Court has accepted review of the lack of notification issue on the Twelfth District's certification of a conflict between its holding in *State v. Smith*, 12th Dist. Warren No. CA2010-06-057, 2011-Ohio-1188, which concluded that the issue was not ripe for review, and the Fourth District's holding in *Moss*, which addressed the issue and found prejudicial error.[1]  *State v. Smith*, 129 Ohio St.3d 1426, 2011-Ohio-3740, 951 N.E.2d 89 (S.Ct. No. 2011-0811).

{¶ 57} We have not previously addressed whether the trial court's failure to provide the required notification under R.C. 2947.23(A)(1) is ripe for review on direct appeal. Neither approach is unreasonable.  Given that a defendant has not been prejudiced, and would not be prejudiced, until he has failed to pay court costs and been ordered to perform community service, we understand the position that the appellate court should not address a harm which may never materialize.  Accordingly, there is some appeal to the approach taken by several appellate districts that the issue is not ripe for review on direct appeal.

{¶ 58} Nevertheless, the Ohio Supreme Court has emphasized that "no judge has the authority to disregard the law by ignoring a statutorily mandated term."  *State v. Jarvis*, 4th Dist. Jackson No. 10CA11, 2011-Ohio-6252, ¶ 6, fn.1, citing *State ex rel. DeWine v. Burge*, 128 Ohio St.3d 236, 2011-Ohio-235, 943 N.E.2d 535, ¶ 19.  "A trial court does not have the discretion to exercise its jurisdiction in a manner that ignores mandatory statutory

---

[1]The court ordered briefing on the following issue: "[W]hether a sentencing court's failure to inform an offender, as required by R.C. 2947.23(A)(1), that community service could be imposed if the offender fails to pay the costs of prosecution or 'court costs' presents an issue ripe for review even though the record does not show that the offender has failed to pay such costs or that the trial court has ordered the offender to perform community service as a result of failure to pay."

provisions." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 20. In addition, as noted by the Fourth District, "absent resentencing and proper notice, the trial court cannot impose a community control sanction for failure to pay costs. That result clearly does not promote the interests of justice." *Id*. Accordingly, we believe the better course is to find the issue ripe for determination and to review Lux's claimed error.

{¶ 59} As stated above, the trial court did not notify Lux that he could be ordered to perform community service if he failed to pay the costs of prosecution imposed under R.C. 2947.23. This was error. At this juncture, however, it appears that Lux has served his one-year prison sentence, and we cannot remand the matter to the trial court for resentencing. Accordingly, should Lux fail to pay the ordered court costs, he cannot be ordered to perform community service.

C. *Post-Release Control*

{¶ 60} Finally, Lux claims that his sentence is void, because the trial court did not properly impose post-release control. Lux states that the trial court incorrectly informed him at the sentencing hearing that periods of post-release control "could be consecutive." He further asserts that the judgment entry erroneously states that post-release control was optional and that he could be returned to prison for up to nine months if he violated post-release control.

{¶ 61} According to R.C. 2967.28, the post-release control statute, Lux was subject to a mandatory five years of post-release control based on his conviction for gross sexual imposition, a felony sex offense. Under R.C. 2929.19(B)(2)(c), the trial court was required to notify Lux of his post-release control at sentencing.

{¶ 62} At the sentencing hearing, the trial court informed Lux: "In your case, Mr. Lux, there's a mandatory five years post release control. When you get out you will have rules and regulations you'll have to follow for a five year period. This is a sex offense and it carries mandatory five years." Lux's judgment entry included a mandatory term of five years post-release control. It stated: "Once Defendant is released from his term of incarceration at the Ohio Department of Rehabilitation and Corrections, he has been notified that he is subject to mandatory Post Release Control for five years ordered by the Adult Parole Authority."

{¶ 63} Lux argues that the trial court imposed an optional period of post-release control. He cites to another portion of the judgment entry that reads: "After prison release, if post-release control is imposed, for violating post release control conditions, the adult parole authority or parole board could impose a more restrictive or longer control sanction, return defendant to prison for up to nine months for each violation, up to a maximum of 50 percent of the stated term." This provision indicates the penalty that may be imposed if post-release control were violated. Although it includes the phrase "if post-release control is imposed," the paragraph does not reflect that Lux's period of post-release control was optional.

{¶ 64} R.C. 2967.28(F)(3) authorizes a prison term to be imposed as a sanction for violating post-release control. Unless a releasee's stated prison term was reduced pursuant to R.C. 5120.032, "the period of a prison term that is imposed as a post-release control sanction under this division shall not exceed nine months, and the maximum cumulative prison term for all violations under this division shall not exceed one-half of the stated

prison term originally imposed upon the offender as part of this sentence." Id. R.C. 2929.19(B)(2)(e) requires the trial court to tell a defendant at sentencing that "if a period of supervision is imposed following the offender's release from prison, *** and if the offender violates that supervision or a condition of post-release control ***, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender. ***"

{¶ 65} At sentencing, the trial court told Lux, "If you violate any of those [rules and regulations,] the Adult Parole Authority can send you back to the institution for a period not to exceed one-half the amount of time you would have served in the first place." As quoted above, the judgment entry further states that "the adult parole authority or the parole board could impose a more restrictive or longer control sanction, return defendant to prison for up to nine months for each violation, up to a maximum of 50 percent of the stated term."

{¶ 66} Lux asserts that the sentencing entry is incorrect, because it states that he could be returned to prison for a period of nine months. We disagree. The judgment entry reflects the language of R.C. 2967.28(F)(3). Although the entry references the nine-month statutory maximum for each violation, the judgment entry further states that the maximum period could not exceed one-half of Lux's prison term, i.e., one-half of a one-year sentence. Reading the paragraph as a whole, the judgment entry accurately states that the maximum period would be one-half of Lux's sentence, i.e., six months. We find no error with this portion of the trial court's judgment entry.

{¶ 67} Lux further claims that the trial court erroneously told him at sentencing that post-release control could be imposed as a prison term consecutively to any prison term for a

felony committed while on post-release control.    The trial court stated at sentencing:

{¶ 68} "If you were out and you picked up another felony charge and got convicted of it after you got release on Post release control[,] your new sentencing Judge can take the balance of your Post release control and run it consecutive to your new sentence and order the whole thing to be served in the pen.    So here's how that happens.    If you're out and you get picked up[,] let's say hypothetically for a felony five theft offense, maximum penalty twelve months, and you would get ten months in the pen and you're still on post release control, you're in for your first year of post release control, you'd have four years post release control left, your sentencing Judge could take that four years and run it consecutive to the one and you'd be doing five years on a theft offense.    That's how that works."

{¶ 69} Lux asserts that the trial court's statement is contrary to R.C. 2967.28(F)(4)(d).    R.C. 2967.28(F)(4), however, addresses the length of post-release control to be imposed following an offender's release from prison on a new felony committed while on post-release control.[2]    We do not find R.C. 2967.28(F)(4)(d) to be applicable.

{¶ 70} Rather, R.C. 2929.141 addresses sentencing for an offense committed while under post-release control.    It provides:

{¶ 71} "(A) Upon the conviction of or plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, the court may terminate the

---

[2]Specifically, R.C. 2967.28(F)(4)(d) states: "Any period of post-release control shall commence upon an offender's actual release from prison. If an offender is serving an indefinite prison term or a life sentence in addition to a stated prison term, the offender shall serve the period of post-release control in the following manner: ***

"(d) The period of post-release control for a releasee who commits a felony while under post-release control for an earlier felony shall be the longer of the period of post-release control specified for the new felony under division (B) or (C) of this section or the time remaining under the period of post-release control imposed for the earlier felony as determined by the parole board or court."

term of post-release control, and the court may do either of the following regardless of whether the sentencing court or another court of this state imposed the original prison term for which the person is on post-release control:

{¶ 72} "(1) In addition to any prison term for the new felony, impose a prison term for the post-release control violation. The maximum prison term for the violation shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony. In all cases, any prison term imposed for the violation shall be reduced by any prison term that is administratively imposed by the parole board as a post-release control sanction. A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony. The imposition of a prison term for the post-release control violation shall terminate the period of post-release control for the earlier felony.

{¶ 73} "(2) Impose a sanction under sections 2929.15 to 2929.18 of the Revised Code for the violation that shall be served concurrently or consecutively, as specified by the court, with any community control sanctions for the new felony."

{¶ 74} In accordance with R.C. 2929.141, the trial court correctly informed Lux that the balance of his post-release control (e.g., four years, in the trial court's example) could be imposed as prison time to be served consecutively to any prison sentence that Lux might receive for the new felony.

{¶ 75} In summary, the trial court correctly classified Lux as a Tier II sex offender and properly ordered him to pay court costs. The court properly informed Lux at the sentencing hearing that he was subject to a mandatory five-year period of post-release

control and that a violation of his post-release control could result in his being returned to prison for a term equaling one-half of his sentence; the judgment entry reflects these statements.   The court also correctly informed Lux at the sentencing hearing that, if he were convicted of a felony while on post-release control, the balance of his post-release control could be imposed as a prison sentence, to be served consecutively to his new sentence.   The court failed to inform Lux that he could be required to perform community service should he fail to pay court costs.   As a result, community service cannot be ordered should Lux fail to pay the those costs.

{¶ 76} Lux's first assignment of error is overruled in part and sustained in part.

IV

{¶ 77} The trial court's judgment will be affirmed. The trial court may correct any typographical errors in the judgment entry, consistent with this opinion, through a nunc pro tunc entry.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

James D. Bennett
Mark A. Deters
Hon. Robert J. Lindeman