[Cite as *State v. Debruce*, 2012-Ohio-454.]

STATE OF OHIO          )          IN THE COURT OF APPEALS
                       )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT       )

STATE OF OHIO                      C.A. No.      25574

    Appellee

    v.                            APPEAL FROM JUDGMENT
                                  ENTERED IN THE
JULIAN D. DEBRUCE                  COURT OF COMMON PLEAS
                                  COUNTY OF SUMMIT, OHIO
    Appellant                     CASE No.     CR 10 04 0955

DECISION AND JOURNAL ENTRY

Dated: February 8, 2012

---

BELFANCE, Presiding Judge.

**{¶1}** Julian Debruce appeals his convictions for rape and kidnapping. For the reasons set forth below, we affirm his convictions but remand to the trial court for the proper imposition of court costs.

I.

**{¶2}** S.M. and Mr. Debruce were at the home of S.M.'s friend and at some point, went into the bathroom to talk. According to S.M., Mr. Debruce punched S.M. in the face, and she ran out of the home to a house across the street. When the neighbor answered the door, Mr. Debruce threatened him, and so the neighbor did not let S.M. inside.

**{¶3}** According to S.M., Mr. Debruce dragged S.M. by her hoodie back to his sister's apartment, stopping occasionally to force her to perform oral sex. At his sister's apartment, Mr.

Debruce forced S.M. to repeatedly perform oral sex and he engaged in vaginal intercourse with her. Throughout the encounter, Mr. Debruce repeatedly threatened to kill or injure S.M.

{¶4} Mr. Debruce let S.M. go the next morning, but only after he blindfolded her and walked her away from his sister's apartment. S.M. ran to a neighborhood store and called 911. She eventually led the police to Mr. Debruce, and he was arrested.

{¶5} A jury convicted Mr. Debruce of two counts of rape and one count of kidnapping. The trial court sentenced Mr. Debruce to an aggregate term of 22 years. Mr. Debruce has appealed, raising five assignments of error for review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY DENYING MR. DEBRUCE'S CRIMINAL[ ]
RULE 29 MOTION FOR ACQUITTAL AS THE STATE FAILED TO
PRESENT SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTIONS.

{¶6} Mr. Debruce argues that the State presented insufficient evidence to sustain his convictions because S.M.'s testimony is uncorroborated. We disagree.

{¶7} We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *State v. Frashuer*, 9th Dist. No. 24769, 2010-Ohio-634, ¶ 33. "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams,* 9th Dist. No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins,* 78 Ohio St.3d at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to

reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶8} The jury found Mr. Debruce guilty of violating R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." It also found that Mr. Debruce violated R.C. 2905.01(A)(4), which provides that "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity * * * with the victim against the victim's will[.]"

{¶9} S.M testified that she was walking from her friend's apartment behind the Hi-De-Ho bar when she heard Mr. Debruce call out her name. She spoke with Mr. Debruce who told her that he had some alcohol in his car, and the two of them went to the house of S.M.'s friend Todd Stafford. According to S.M., she and Mr. Debruce eventually ended up in Mr. Stafford's bathroom. S.M. testified that Mr. Debruce became angry with her and hit her. She called for Mr. Stafford, but Mr. Stafford made S.M. and Mr. Debruce leave. S.M. went across the street to the house of Omar Muhammad, whom she had met before. She testified that she asked to use Mr. Muhammad's phone, but Mr. Debruce threatened to hurt Mr. Muhammad if he let S.M. in the house and Mr. Muhammad did not let her inside.

{¶10} S.M. testified that, after Mr. Muhammad shut the door, she walked down the street, telling Mr. Debruce that he was wrong to have hit her. When she tried to walk away from Mr. Debruce, however, Mr. Debruce grabbed her by the hoodie and began to drag her down street. According to S.M., she attempted to convince him to let her go, but he told her he would

throw her in a trunk and drive her out of town. Over the course of the night, Mr. Debruce threatened that he would stab S.M., stick a "branch up [her] *ss[,]" and break her nose.

{¶11} S.M. testified Mr. Debruce dragged her past a house with people outside and that she tried to run up the driveway. However, Mr. Debruce grabbed her hoodie again and struck her. After they had walked some more, Mr. Debruce stopped in the middle of a street and forced S.M. to perform oral sex on him. Mr. Debruce dragged S.M. to the towpath near Summit Lake, stopping to urinate onto S.M. and into her mouth. Mr. Debruce told her that she should drink his urine. After Mr. Debruce had relieved himself, he dragged S.M. to an apartment where he forced her to strip and then perform oral sex on him again. He also engaged in vaginal intercourse with her on the couch.

{¶12} According to S.M., after the vaginal intercourse, Mr. Debruce began to use a laptop computer. S.M. testified that, at some point after Mr. Debruce began using the computer, she performed oral sex on him again and that, when she said her jaw was tired, Mr. Debruce threatened to break her nose. She testified that she performed oral sex on Mr. Debruce until he did not want it anymore and then they engaged in vaginal intercourse again. S.M. testified that she had been "threatened so much[]" that she wanted "to do what [she] had to do to go home."

{¶13} Eventually, S.M. fell asleep, but awoke when Mr. Debruce's sister Tiara Taylor came downstairs with her children. According to S.M., she was intimidated because Mr. Debruce was awake and watching her. After Ms. Taylor and her children left, Mr. Debruce offered S.M. some food and then returned her clothes to her. He also gave her a jacket because she was cold. He then blindfolded her and led her out of and away from the apartment building before letting her go. S.M. ran to a store and asked to use the phone because she had been raped and needed to call her mother.

{¶14} Valorie Prulhiere, a registered nurse, performed a physical examination of S.M. She testified that S.M.'s lower lip was bruised and scraped and that her upper lip was bruised and swollen. Jennifer Pelc, a forensic biologist at the Bureau of Criminal Identification and Investigation ("BCI"), testified that she examined the clothes S.M. wore the night that Mr. Debruce allegedly raped her. According to Ms. Pelc, S.M.'s hoodie tested presumptively positive for urine.

{¶15} Stacy Violi, a forensic scientist at the BCI, examined the vaginal sample from S.M.'s rape kit. According to Ms. Violi, the sample contained the DNA profiles matching those of S.M. and Mr. Debruce. She also testified that she examined a cutting from Mr. Debruce's t-shirt that Ms. Pelc had marked as testing positive for blood. Ms. Violi testified that the t-shirt cutting contained DNA from S.M., Mr. Debruce, and two other individuals. Ms. Violi also examined samples from S.M.'s hoodie and determined that they contained S.M.'s DNA as well as other individuals. However, she could not "make a conclusion regarding [Mr.] Debruce as a contributor to the DNA on the hoodie."

{¶16} In summary, S.M. testified that Mr. Debruce dragged her through the streets of Akron and repeatedly threatened to kill or harm her if she did not perform fellatio on him. She testified that she was threatened so much that she just wanted to do whatever she could to get home. Ms. Prulhiere testified that S.M. had bruising and scrapes on her face, and Ms. Violi testified that the semen sample from S.M. matched Mr. Debruce's DNA profile. Therefore, there was sufficient evidence from which the trier of fact could reasonably find that Mr. Debruce by force restrained S.M.'s liberty and that he forced her to engage in sexual conduct against her will by force or threat of force. Accordingly, the State presented sufficient evidence for the jury to find that Mr. Debruce had violated R.C. 2907.02(A)(2) and 2905.01(A)(4).

**{¶17}** Mr. Debruce's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE.

{¶18} In Mr. Debruce's second assignment of error, he argues that the jury lost its way
to the extent that it believed S.M.'s testimony. We disagree.

{¶19} In reviewing a challenge to the weight of the evidence, the appellate court "must
review the entire record, weigh the evidence and all reasonable inferences, consider the
credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of
fact clearly lost its way and created such a manifest miscarriage of justice that the conviction
must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th
Dist.1986).

{¶20} Mr. Debruce argues that his sister's testimony establishes that the sexual contact
between S.M. and him was consensual. He points to the testimony of Ms. Taylor that, when she
let Mr. Debruce and S.M. into her apartment, S.M. came inside willingly. He also points to Ms.
Taylor's testimony that S.M. appeared calm the next morning. According to Ms. Taylor, she saw
the two of them lying on the couch facing each other while covered with a sheet. They were
eating potato chips, and S.M. was smoking a cigarette.

{¶21} While Ms. Taylor's testimony differed from that of S.M., the jury was not
required to believe her version of events, especially given that Ms. Taylor is Mr. Debruce's
sister. Furthermore, despite Mr. Debruce's argument to the contrary, multiple witnesses
corroborated parts of S.M.'s testimony. Mr. Stafford testified that S.M. came to his home and
that she went into the bathroom with Mr. Debruce. He also testified that, when she came to his
front door, she did not have any injuries on her face but that, when S.M. came out of the
bathroom, her mouth was bleeding. Mr. Stafford testified that S.M. left and went across the

street to Mr. Muhammad's house, and Mr. Muhammad testified that S.M. knocked on his door. According to Mr. Muhammad, when he answered the door, he "heard a voice say, 'Don't let that b**** in[,]'" which partially corroborated S.M.'s testimony that Mr. Debruce had threatened Mr. Muhammad.

{¶22} Janice Rogers, S.M.'s mother, testified that S.M. called her from the store. According to Ms. Rogers, when she arrived at the store, S.M. was crying hysterically and trying to tell her what happened. She testified that S.M.'s mouth was swollen, as did Ms. Prulhiere. Officer Marlon Mallard, who was the first officer to respond, testified that he briefly spoke with S.M. at the store and more extensively at the hospital. According to Officer Mallard, S.M. appeared "upset" both times he spoke with her. Furthermore, Ms. Violi testified that she found S.M.'s DNA in a blood stain on Mr. Debruce's shirt, and Ms. Pelc testified that S.M.'s hoodie tested positive for urine, which could support S.M.'s testimony that Mr. Debruce had urinated on her.

{¶23} The testimony of Mr. Stafford and Mr. Muhammad, for the most part, corroborated the testimony of S.M., as did the physical evidence discovered on S.M.'s hoodie and Mr. Debruce's shirt. Multiple witnesses testified that S.M. appeared extremely upset when she was at the store immediately after she left Mr. Debruce's company and at the hospital. After a thorough review of the record, we cannot say that this is the exceptional case where the jury lost its way when it found that Mr. Debruce had violated R.C. 2907.02(A)(2) and 2905.01(A)(4).

{¶24} Mr. Debruce's convictions are not against the manifest weight of the evidence. His second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE PROSECUTOR'S REMARKS DURING CLOSING ARGUMENT WERE
PREJUDICIAL AND DENIED MR. DEBRUCE A FAIR TRIAL.

**{¶25}** Mr. Debruce argues that he was denied a fair trial due to prosecutorial misconduct during closing arguments. We disagree.

**{¶26}** "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 155, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[C]omments made in closing argument are not viewed in isolation, rather the closing argument is reviewed in its entirety to determine whether remarks by the prosecutor were prejudicial." (Internal quotations and citations omitted.) *Akron v. McGuire*, 9th Dist. No. 24638, 2009-Ohio-4661, ¶ 10.

**{¶27}** During the State's rebuttal closing argument, the prosecutor said, "I mean, look at [Mr. Debruce]. You know, if this man looked at you and said, 'I'm going to kill you,' I think you would believe him." Mr. Debruce's counsel objected, and the trial court sustained the objection. The trial court also instructed the jurors, "You're not to consider that statement made by the prosecutor in your deliberations."

**{¶28}** Mr. Debruce argues that, despite the trial court's instruction, he was prejudiced by the prosecutor's statement. Mr. Debruce correctly asserts that the prosecutor's remark was improper. However, a jury is presumed to follow the curative instructions of the trial court. *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). Mr. Debruce's counsel objected to the prosecutor's statement and the trial court immediately gave the curative instruction.

Furthermore, looking at the prosecutor's closing argument as a whole, we cannot say the court's curative instruction would be ineffective. The prosecutor's statement was prompted, at least in part, by the argument of Mr. Debruce's counsel during his closing that S.M.'s story did not make any sense because she never called for help. The prosecutor reminded the jury that S.M. had testified that Mr. Debruce had repeatedly threatened to kill or injure her. While the prosecutor's comment was improper, it was responding to defense counsel's implication that S.M. was making up her testimony, which suggested that S.M. was untruthful or unreasonable in feeling threatened or fearful when Mr. Debruce told her he would kill or injure her.

{¶29} As noted above, S.M.'s testimony was that Mr. Debruce raped her and her testimony was corroborated at least in part by physical evidence and testimony of other witnesses. S.M.'s DNA was found in a bloodstain on Mr. Debruce's shirt, and her hoodie tested presumptively positive for urine. S.M.'s mother and Officer Mallard testified that S.M. appeared upset when they spoke to her, and Mr. Stafford testified that S.M. came out of his bathroom with a bloody lip. Mr. Muhammad testified that, when S.M. came to his door, someone threatened him and told him not to let her inside.

{¶30} In other words, the evidence against Mr. Debruce was substantial, and the trial court issued a curative instruction immediately after the prosecutor made her remark. Accordingly, we cannot say that the prosecutor's remark prejudicially affected Mr. Debruce's substantial rights or affected the fairness of his trial.

{¶31} Mr. Debruce's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING COURT COSTS AGAINST [MR. DEBRUCE] WITHOUT COMPLYING WITH R.C. 2947.23(A).

{¶32} Mr. Debruce argues that the trial court committed plain error when it failed to notify him that it could potentially order him to perform community service if he failed to pay the court costs.

{¶33} R.C. 2947.23(A)(1) requires the trial court to inform a defendant that

[i]f the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

[And,] [i]f the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

{¶34} At Mr. Debruce's sentencing hearing, the trial court remarked that it was "reserv[ing] the right to order community service in the future if [Mr. Debruce] is unable to work." However, the trial court did not inform Mr. Debruce of the other provisions of R.C. 2947.23(A)(1), a fact which the State concedes.

{¶35} Ohio courts are divided as to whether a trial court's failure to inform a defendant of the provisions of R.C. 2947.23(A)(1) is reviewable on direct appeal. Some districts have concluded that defendants do not suffer any prejudice until they fail to pay court costs and the trial court orders them to perform community service. *See State v. Gates*, 11th Dist. No. 2011-P-0001, 2011-Ohio-5711, ¶ 49; *State v. Barkley*, 185 Ohio App.3d 686, 2009-Ohio-5549, ¶ 12 (10th Dist.); *State v. Kearse*, 3rd Dist. No. 17-08-29, 2009-Ohio-4111, ¶ 6; *State v. Nutter*, 12th Dist. No. CA2008-10-009, 2009-Ohio-2964, ¶ 12. However, other districts have concluded that

the failure to notify the defendant did constitute prejudicial error. *See State v. Lux*, 2nd Dist. No. 2010 CA 30, 2012-Ohio-112, ¶ 58-59; *State v. Adams*, 8th Dist. No. 95439, 2011-Ohio-2662, ¶ 3; *State v. Ruby*, 6th Dist. No. S-10-028, 2011-Ohio-4864, ¶ 41-43; *State v. Moss*, 186 Ohio App.3d 787, 2010-Ohio-1135, ¶ 19-20 (4th Dist.); *State v. Gabriel*, 7th Dist. No. 09 MA 108, 2010-Ohio-3151, ¶ 33; *State v. Dansby*, 5th Dist. No. 08 AP 06 0047, 2009-Ohio-2975, ¶ 17-22. The Supreme Court of Ohio has accepted review of this issue on a certification of conflict. *State v. Smith*, 129 Ohio St.3d 1426, 2011-Ohio-3740.

**{¶36}** R.C. 2947.23(A)(1) provides that trial courts "*shall* notify" a defendant. (Emphasis added.). As noted by the Second District in *Lux*, the notifications in R.C. 2947.23(A)(1) are mandatory, and the Ohio Supreme Court has emphasized "'no judge has the authority to disregard the law by ignoring a statutorily mandated term.'" *Lux* at ¶ 58, quoting *State v. Jarvis*, 4th Dist. No. 10CA11, 2011-Ohio-6252, ¶ 6, fn. 1. Accordingly, this issue is ripe for adjudication on direct appeal. *See Lux* at ¶ 58.

**{¶37}** Because the trial court did not provide Mr. Debruce with the notifications required by R.C. 2947.23(A)(1), it committed error. *Id*. at ¶ 59. However, the State argues that we should follow the reasoning in *Gabriel* and modify Mr. Debruce's sentence to prohibit the trial court from implementing community control. *Gabriel* at ¶ 34. However, although not illogical, the statute does not expressly provide for the forfeiture of community service where there is a failure of notification.

**{¶38}** While we understand the *Gabriel* court's conclusion that "judicial economy is best served" by modifying a defendant's sentence to prohibit any future order of community service if the defendant has not been properly notified, "judicial economy" is not the only consideration. S*ee Gabriel* at ¶ 33-34. In effecting a statutorily mandated notification

procedure, the legislature necessarily found it imperative that a criminal defendant be informed of the potential consequence of failing to pay a judgment for court costs. Presumably, this evinces the legislature's concern that a defendant be fully informed not only of his sentence but also the financial obligations attendant to his conviction. Furthermore, a defendant's obligation to pay court costs arises from an implied contract. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, ¶ 20. "'By being involved in court proceedings, any litigant, by implied contract, becomes liable for the payment of court costs if taxed as a part of the court's judgment.'" *Id.*, quoting *Strattman v. Studt*, 20 Ohio St.2d 95 (1969), paragraph six of the syllabus. Thus, removing the trial court's ability to order community service in lieu of a defendant paying court costs "does not promote the interests of justice." (Internal quotations and citation omitted.) *Lux* at ¶ 58. Accordingly, we conclude that the proper remedy is to reverse the trial court's imposition of court costs and remand for the proper imposition of court costs in accordance with the requirements set forth in. R.C. 2947.23(A)(1).

{¶39} Mr. Debruce's fourth assignment of error is sustained.

### ASSIGNMENT OF ERROR V

[MR. DEBRUCE] WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT'S IMPOSITION OF COURT COSTS UNDER R.C. 2947.23(A) WAS DEFECTIVE.

{¶40} Due to our resolution of Mr. Debruce's fourth assignment of error, this assignment of error is moot, and, therefore, we do not address it. *See* App.R. 12(A)(1)(c).

### III.

{¶41} Mr. Debruce's fourth assignment of error is sustained. His first, second, and third assignments of error are overruled, and his fifth assignment of error is moot. The judgment of

the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

MARTHA HOM, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.