[Cite as *State v. Allender*, 2012-Ohio-2963.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24864 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-1635/1 |
| v. | : | |
| | : | |
| SHERRY ALLENDER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of June, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

MICHAEL C. THOMPSON, Atty. Reg. #0041420, 5 North Williams Street, Wright-Dunbar Business Village, Dayton, Ohio 45402-2843
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

## I. Introduction

{¶ 1} Defendant-appellant Sherry Allender appeals from that part of the judgment

of the trial court that disapproves her placement in a program of shock incarceration or an intensive program prison. She contends that the trial court erred by failing to give its reasons for disapproving shock incarceration and intensive program prison at sentencing.

{¶ 2}     We agree with Allender that the trial court failed to "make a finding that gives its reasons for its * * * disapproval of Allender's placement in these programs," as required by R.C. 2929.19(D). Accordingly, that part of the judgment of the trial court that disapproves Allender's placement in a program of shock incarceration or an intensive program prison is Reversed; the judgment of the trial court is Affirmed in all other respects; and this cause is Remanded for further proceedings.


## II.   The Course of Proceedings

{¶ 3}     In June 2011, Sherry Allender was indicted on one count of Complicity to Commit Abduction (Restraint), in violation of R.C. 2905.02(A)(2) and R.C. 2923.03, and one count of Complicity to Commit Endangering Children (Torture/Cruelly Abuse), in violation of R.C. 2919.22(B)(2) and R.C. 2923.03, both felonies of the third degree. The indictment charged that Allender and Charles J. Jones, Jr., had committed these offenses on April 17, 2011. An additional finding was included, stating that Allender had caused or threatened physical harm to a person during the commission of the offense.

{¶ 4}     In September 2009, the grand jury issued Reindictment "B," alleging in Count One that Allender and Jones had restrained the liberty of N.A., a minor child, under circumstances that created a risk of harm to N.A., or had placed her in fear, in violation of R.C. 2905.02(A)(2). An additional finding was made that pursuant to R.C. 2967.28, Allender

had caused or threatened physical harm to a person during the commission of the offense. In Count Two, the Reindictment alleged that Allender and Jones had recklessly tortured or cruelly abused a minor child, N.A., who was three years of age, contrary to R.C. 2919.22(B)(2). Again, a finding was made that Allender had caused or threatened physical harm to a person during the commission of the offense. Both offenses were alleged to have been committed on April 17, 2011.

{¶ 5} On September 12, 2011, Allender appeared in court and pled guilty to the charges in the original indictment, including the special findings that she had caused or threatened physical harm to a person during the commission of the offense. The State agreed to nolle the "B" indictment. The trial court indicated that the two offenses in the indictment would be merged, and the State would elect the charge at sentencing upon which it wished to proceed. At the plea hearing, the trial court indicated that it would agree to a sentencing cap of a period of incarceration of one to five years, leaving all those options open, but capping the maximum period of incarceration at three years.

{¶ 6} During the plea hearing, it became apparent that sentencing would not take place before September 30, 2011, when new sentencing provisions would come into effect. As a result, the court informed Allender that she could withdraw her plea if any change in her proposed cap of three years maximum occurred. The plea hearing was then reconvened later that day, when Allender's co-defendant was scheduled to plead. At that time, the court explained the benefits that would accrue under the new sentencing laws, which lessened the potential term of imprisonment for a third-degree felony to a shorter term, ranging between nine months and 36 months.

{¶ 7}     Allender expressed her understanding of the change in the law, and indicated that she wanted to stand by the guilty plea that she had entered. The court accepted Allender's guilty plea, ordered a pre-sentence investigation, and scheduled sentencing for October 6, 2011, after the changes in the law took effect.

{¶ 8}     At the sentencing hearing, the court stated that it had received and reviewed the pre-sentence investigation report, as well as sentencing memoranda filed by Allender and by the State.[1] Allender's memorandum indicates that Allender was a first-time felony offender, and that she was alleged to have taken part in applying duct tape to the wrists, ankles, and mouth of her minor child, and later removing the tape, causing her child harm. The activity was recorded on a cell phone. Allender alleged that her co-defendant, Jones, was the primary actor, and that the actions were not to punish the child, but resulted from a "game" that went too far.

{¶ 9}     The pre-sentence investigation report indicated that Allender had admitted tp the police that her three-year old child had been duct-taped around the hands and legs, and on the mouth. Allender stated that it was "all in fun," and was done at her child's request. The incident was video recorded on Jones's cell phone, and showed the child with her hands bound behind her back and a piece of tape reaching from cheek to cheek. Her ankles were also bound together. A male was overheard laughing in the background. During the taping, the arm of a white male was shown ripping the tape from the child's mouth, causing the child to release a "blood-curdling scream." The child attempted to keep her balance while

---

[1]The record does not contain a sentencing memorandum from the State. It does contain the pre-sentence investigation report and Allender's sentencing memorandum.

screaming, but fell onto the right side of the floor, hitting her head against the wall. While the child was lying on the floor, a male's voice could be heard saying, "Act bad like this all the time and this is what you get! The next time it will be 15-20 minutes!" The video shut off before the tape was removed from the child's hands and ankles.

{¶ 10} Allender stated that she had consumed twelve beers that day, and could not help her child, because she was so intoxicated. She also indicated that Jones had not been drinking, but had smoked four to five bowls of marijuana and one marijuana blunt prior to the incident. The incident took place on April 17, 2011, at the home of Allender's mother, in Kettering, Ohio. The video recording came into the possession of the father of the minor child, in May 2011, when the phone was given to him by Allender as collateral for money he had loaned her. After receiving the phone, the child's father discovered the video. He then contacted the police.

{¶ 11} The pre-sentence investigation report also indicated that Allender had a prior misdemeanor conviction in January 2011 for violation of a temporary protection order. The protection order had been issued in December 2010 on behalf of John R. Kelly, who was the father of Allender's one-year-old child. In addition, Allender appears to have had a long history of substance abuse.

{¶ 12} The pre-sentence investigation report recommended incarceration, stating that:

> The listed victim was Ms. Allender's biological three year old daughter. At the time the offense was occurring, Ms. Allender did not see anything wrong with she [sic] and Mr. Jones's actions. It was not until this offense was

brought before the court did she believe what occurred may have been wrong. Additionally, Ms. Allender failed to adhere to the duties as a parent to protect her child. To grant community control would demean the seriousness of the offense.

{¶ 13} At the sentencing hearing, the court heard from Allender, who apologized for her actions, and stated that the case arose from a "big misunderstanding." The court also heard from the child's father, who expressed anger at what had occurred, but did not request a particular sentence. After considering all these matters, the trial court sentenced Allender to three years in prison. The court also told Allender at the hearing: You are eligible for shock incarceration or intensive program prison; however, based on the purposes and principles of sentencing, and the seriousness and recidivism factors in the Revised Code, the Court will disapprove of your placement in such programs.

{¶ 14} In its judgment entry, the trial court addressed the shock incarceration and intensive program prison issues as follows:

After reviewing the criminal history of the defendant, the pre-sentence investigation, the facts and circumstances of the offense, and any victim impact statement [there was one], the Court disapproves of the defendant's placement in a program of shock incarceration under Section 5120.031 of the Revised Code, or in the intensive program prison under Section 5120.032 of the Revised Code.

{¶ 15} Allender appeals from that part of the judgment of the trial court that disapproves her placement in a program of shock incarceration or an intensive program prison.

### III. The Trial Court Erred by Failing to Make a Finding Setting Forth its Reasons for Disapproving Shock Incarceration and Intensive Program Prison.

{¶ 16} Allender's sole assignment of error is as follows:

THE TRIAL COURT ERRED BY DISAPPROVING SHOCK INCARCERATION AND INTENSIVE PROGRAM PRISON AT SENTENCING, BY FAILING TO STATE SPECIFIC PARTICULARIZED REASONS FOR SAID DISAPPROVAL.

{¶ 17} Under this assignment of error, Allender contends that the trial court erred in failing to give sufficient, particularized reasons for disapproving placement in a program of shock incarceration or intensive program prison. Allender urges us to follow decisions from the Fifth and Eleventh District Courts of Appeal, which have allegedly required specificity in trial court findings.

{¶ 18} We discussed this issue at some length in *State v. Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283, 944 N.E.2d 258 (2d Dist.). We noted that:

"Intensive-program prison" * * * includes institutions that have military-type regimen programs as described in R.C. 5120.031 and institutions that focus on "educational achievement, vocational training, alcohol and other drug abuse treatment, community service and conservation work, and other intensive regimens or combinations of intensive regimens." R.C. 5120.032. As

noted by the Ohio Department of Correction and Rehabilitation:

"The 'Second Chance to Change' initiative is the newest phase in the Department's development strategy for Intensive Program Prisons (IPP's). 'Intensive Program Prisons' refers to several ninety-day programs, for which certain inmates are eligible, that are characterized by concentrated and rigorous specialized treatment services. An inmate who successfully completes an IPP will have his/her sentence reduced to the amount of time already served and will be released on post-release supervision for an appropriate time period."

*Id.* at ¶ 11-12.

**{¶ 19}** A trial court may approve or disapprove of a defendant's placement into intensive program prison. R.C. 2929.19(D). In *Howard*, the trial court failed to mention either shock incarceration or intensive program prison at the sentencing hearing, but did reject the defendant's participation in these programs in a subsequent termination entry. *Id.* at ¶ 19. On appeal, we considered whether the trial court's method of rejection was adequate. We first discussed cases from the Fifth and Eleventh District Courts of Appeal, which had held that trial courts need not address participation during the sentencing hearing. *Id.* at ¶ 28-32. We noted that:

We agree that the trial court in the case before us was not required to address the issue during the sentencing hearing. As noted by the Fifth and Eleventh Appellate Districts, the statutes do not require trial courts to make any kind of recommendation. Once the court makes a recommendation, however, the court is also required by R.C. 2929.19(D) to make a finding "that gives its

reasons for its recommendation or disapproval." *Id*. at ¶ 33.

{¶ 20} Our next task in *Howard* was to consider whether the trial court findings complied with R.C. 2929.19(D). In this regard, we noted decisions from the Fifth and Tenth Appellate Districts, which had found "substantial compliance" with the findings requirement in R.C. 2929.19(D), based on other findings and comments the trial court had made regarding the seriousness of the offense, and on comments the court had made when deciding to impose a greater than minimum sentence. *Id*. at ¶ 35, citing *State v. Jackson*, 5th Dist. Knox No. 05 CA 46, 2006-Ohio-3994, ¶ 14-15, and *State v. Sears*, 10th Dist. Franklin No. 02AP-1343, 2003-Ohio-2696, ¶ 32. Unlike the courts in these cases, the trial court in *Howard* failed to make any specific comments when imposing sentence, other than stating that it had considered the "purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors of R.C. 2929.12." *Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283, 944 N.E.2d 258, at ¶ 36.

{¶ 21} Despite the court's failure to comment, the State argued in *Howard* that a pre-sentence investigation report would have been submitted to the trial court before Howard was sentenced. The State also argued that we should presume the regularity of the trial court proceedings, because Howard failed to submit either the pre-sentence investigation report or the transcript of the original sentencing hearing. *Id*. at ¶ 37. We rejected the State's arguments, because the trial court did not indicate that it had relied on these items. *Id*. at ¶ 38. We stressed that:

> The record does not contain any finding by the trial court "that gives its
>
> reasons for its * * * disapproval [of shock incarceration or an intensive

program prison]. " Nor does the record contain any other findings by the trial court that could be deemed to constitute its implied reasons for disapproval of either program. In short, the record reflects a complete failure by the trial court to have complied with the finding requirement of R.C. 2929.19(D). We are therefore unable to conclude that the trial court substantially complied with that requirement. *Id.* at ¶ 39.

**{¶ 22}** In the case before us, the State argues that "[t]his record provides sufficient reasons to support shock incarceration and IPP disapproval." That may well be, but R.C. 2929.19(D) requires more than that reasons can be found in the record to support the trial court's disapproval of the programs; the statute requires that the trial court, if it shall make a recommendation, must "make a finding that gives its reasons for its recommendation or disapproval." This statutory requirement, imposed on the trial court, is not satisfied by an appellate court finding in the record reasons that the trial court could have given, or might have given, for disapproval.

**{¶ 23}** The State cites three cases in support of its proposition that the record in this case reflects implied reasons for the trial court's disapproval. In *State v. Tucker*, 12th Dist. Butler No. CA2011-04-067, 2012-Ohio-50, ¶ 24, the court of appeals held that the trial court's reference to the defendant's continuing struggle with drug addiction and to be substance free, together with his having tested positive for various drugs including THC and Vicodin in four out of seven urine tests while the charges against him were pending, constituted an implied reason for its disapproval of the defendant for the intensive prison program. Without deciding if we agree with this holding, we conclude that the case before us is distinguishable.

Although the trial court in the case before us referred to various general principles that it considered, and to various sources of information that it reviewed, the trial court did not refer to any specific facts in deciding to disapprove Allender for shock incarceration or the intensive program prison. We could review those same sources of information (the pre-sentence investigation report, the facts and circumstances of the offense, and the victim impact statement) and determine whether we can find reasons therein why Allender should be disapproved for the programs. But the statute requires that the trial court give its reasons for disapproval, not merely that reasons for disapproval exist.

{¶ 24} The State cites *State v. Lowery*, 11th Dist. Trumbull No. 2007-T-0039, 2007-Ohio-6734. The defendant in that case did not argue on appeal that the trial court failed to give its reasons for disapproval of shock incarceration and intensive program prison. The defendant argued that the trial court's disapproval of the programs in its judgment entry was insufficient – that the trial court was obliged to disapprove the programs at the sentencing hearing. The court of appeals disagreed, holding merely that the trial court was required to disapprove the programs in the judgment entry, which the trial court did, if it intended to disapprove them. Although the court of appeals noted that the trial court had satisfied the requirement of R.C. 2929.19(D) that it give its reasons for the disapproval, this was both gratuitous, since the defendant had not raised this issue, and cursory.

{¶ 25} Finally, the State cites *State v. Jackson*, 5th Dist. Knox No. 05 CA 46, 2006-Ohio-3994. In that case, the court of appeals did determine that the record provided sufficient reasons to support the trial court's disapproval of an intensive prison program. But the court of appeals also noted that trial court, noting that the defendant had previously served

a prison term and had a history of criminal convictions, expressed the view "that the shortest prison term would demean the seriousness of Appellant's conduct." *Id.*, ¶ 14. Although it is a stretch, one could deem this reasoning to support, also, the trial court's decision to disapprove the intensive program prison, which would distinguish *Jackson* from the case before us.

{¶ 26} In short, we find the cases cited by the State to be either distinguishable, not persuasive, or both. The statute requires that the trial court provide its reasons for disapproving shock incarceration or the intensive program prison, not merely that the record supports reasons for disapproval that the trial court might have had, but did not express.

{¶ 27} Allender's sole assignment of error is sustained.

## IV. Conclusion

{¶ 28} Allender's sole assignment of error having been sustained, that part of the judgment of the trial court disapproving shock incarceration and intensive program prison is Reversed, the judgment of the trial court is Affirmed in all other respects, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . .

DONOVAN, concurs.

HALL, J., dissenting:

{¶ 29} Because I believe that the trial court complied with the applicable requirements of R.C. 2929.19(D) in its disapproval of shortening a stated prison term through

intensive program prison (IPP) and shock incarceration, I would affirm the judgment of the trial court.

{¶ 30} R.C. 2929.19(D) states: "If the court recommends or disapproves placement [for IPP or shock incarceration], it shall make a finding that gives its reasons for its recommendation or disapproval."[2] As the majority points out, the trial court specifically stated: "You are eligible for shock incarceration or intensive program prison; however, based on the purposes and principles of sentencing, and the seriousness and recidivism factors in the Revised Code, the Court will disapprove of your placement in such programs." (T. 61) The Judgment and Sentencing Entry states: "After reviewing the criminal history of the defendant, the pre-sentence investigation, the facts and circumstances of the offense, and any victim impact statement, the Court disapproves of the defendant's placement in a program of shock incarceration under Section 5120.031 of the Revised Code, or in the intensive program prison under Section 5120.032 of the Revised Code." The majority concludes that the trial court did

---

[2] The initial problem with this provision, which has not been raised by either party, and is not addressed in the case law dealing with the section, is that it is likely unconstitutional. Determination of whether a defendant can participate in a program which could significantly reduce, or definitively solidify, his time in prison is just as influential in deciding the prisoner's ultimate fate as the selection of the number of months or years to which the defendant is sentenced. Under prior law, when a court imposed a sentence, R.C. 2929.19(B)(2) required that the court "shall make a finding that gives its reasons for selecting the sentence imposed * * *." In *State v. Foster*, 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470, the Supreme Court held that R.C. 2929.19(B)(2) was unconstitutional because it permitted judicial fact finding at sentencing. Compare R.C. 2929.19(B)(2) language with R.C. 2929.19(D) (providing that "it shall make a finding that gives its reasons for its recommendation or disapproval"). *Foster* did not deal with 2929.19(D), and one could argue that the fact finding for approving or denying prison programming is not the same as selecting the number of months or years to which a defendant is sentenced. But I don't see a distinction. *Foster* quoted with approval the following from *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002): "'I believe that the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives—whether the statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by the jury beyond a reasonable doubt.'" *Foster* at ¶52, quoting *Ring*, 536 U.S. at 602 (Scalia, J., concurring). Although I question the constitutionality of judicial fact finding in R.C. 2929.19(D), this issue has not been raised. Accordingly, I will proceed under the assumption that its constitutionality is not in question.

not make a finding giving its reasons for denial of the programs. I disagree.

{¶ 31} At sentencing, the trial court found that the purposes and principles of sentencing are the reasons that led the court to deny participation in the programs. In the final entry, the trial court found that the criminal history, PSI, the offense itself, and the victim impact statement were the reasons for denying entry into the programs. Either finding is independently sufficient to satisfy R.C. 2929.19(D). What the majority's decision does is evaluate the adequacy of the trial court's findings, not whether the statute was complied with. In the sentencing context, a trial court's decisions are accorded very broad discretion. Ordinarily any sentence within the range is not an abuse of discretion. *State v. Bailum*, 2d Dist. Clark No. 2007 CA 55, 2008–Ohio–2999. Whether a defendant gets judicial release is relegated to virtually absolute discretion of the trial court, so much so that denial of judicial release is not even appealable because it does not affect a substantial right. *State v. Coffman*, 91 Ohio St.3d 125, 127, 2001–Ohio–296, 742 N.E.2d 644. Given the sentencing context of the IPP and shock incarceration programs, the trial court should have the broadest discretion to deny their application. In light of this very broad discretion, the "findings" of the trial court here are more than adequate.

{¶ 32} The lack of import of reasons given for denying the shortened prison programs becomes even more obvious upon examining the statutory procedure for program admission. If a sentencing court does not approve or disapprove of the programs at sentencing, the ODRC can screen eligible offenders for the programs. R.C. 5120.031 (Shock Incarceration) and R.C. 5120.032 (IPP). If a prisoner is suitable, ODRC is required to notify the sentencing court three weeks before placement. Then "[t]he court shall have ten days from receipt of the notice to

disapprove the placement." R.C. 5120.031 (C)(1) and R.C. 5120.032 (B)(1)(a). But, if the sentencing court "* * * does not timely disapprove of the placement, the department may proceed * * *." *Id.* At this juncture, the trial court is not statutorily required to give any reasons for denial of the programs, thus the reasons given at sentencing are virtually superfluous. The court can deny the programs after sentencing without making any finding or giving any reasons. The practical reason for program denial at sentencing is that stories abound of prisoners who received sentences of 18 months or more, and who were released six months and more early because of faulty, inadequate, or untimely transmission of court notification. Given the risk of unintended early release, I recognize that denial at sentencing is a prudent exercise.

{¶ 33} At the sentencing hearing, the court stated that it had received and reviewed the pre-sentence investigation report. The pre-sentence investigation, which is included in our record, lists the following under more serious factors. "1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim: Victim was three years old at the time of the offense. * * * 6) The Offender's relationship with the victim facilitated the offense: Victim is defendant's daughter.* * * 10) Other more serious factors that apply: Duct tape used to restrain victim." No less serious factors are highlighted. Under "Recidivism Factors" the following are highlighted for "recidivism likely": "2) The offender * * * has a history of criminal convictions * * * [misdemeanor Violation of a Temporary Protection Order] and 3) * * * the offender has not responded favorably to sanctions previously imposed for criminal convictions * * *" [while on probation, a bench warrant for her arrest was issued

for failure to comply]. (PSI at 13). Given all this information in the record upon which the trial court relied, I would agree with the Fifth, Eleventh  and Twelfth Districts  in  *State v. Jackson*, 5th Dist. Knox No. 05 CA 46, 2006-Ohio-3994,   *State v. Lowery*, 11th Dist. Trumbull No. 2007-T-0039, 2007-Ohio-6734, and  *State v. Tucker*, 12th Dist. Butler No. CA2011-04-067, 2012-Ohio-50, all of which upheld reasons for denial of prison programming that were less evident than those stated in this case. Accordingly, I dissent.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Johnna M. Shia
Michael C. Thompson
Hon. Mary L. Wiseman