[Cite as *State v. Blessing*, 2013-Ohio-392.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :          C.A. CASE NO.    2011 CA 56

v.                               :          T.C. NO.    11CR278

MARIA BLESSING                   :          (Criminal appeal from
                                     Common Pleas Court)

    Defendant-Appellant         :

                                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   8th   day of    February   , 2013.

. . . . . . . . . .

LISA M. FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

MARK A. DETERS, Atty. Reg. No. 0085094, 1800 Lyons Road, Dayton, Ohio 45458
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Maria Blessing pled guilty in the Clark County Court of Common Pleas to complicity to having weapons while under disability, a third-degree felony, and

obstructing justice, a fifth-degree felony. A second count of obstructing justice was dismissed as part of the plea. After a pre-sentence investigation, the trial court sentenced Blessing to the maximum one year in prison for obstructing justice and to the maximum five years for complicity to having weapons while under disability, to be served concurrently. Blessing appeals from her conviction.

I.

{¶ 2}     Between October 1, 2010 and February 28, 2011, Blessing aided Michael Ferryman in obtaining an H&R .12 gauge shotgun from Blessing's father, Gene Blessing. After Mr. Blessing purchased the gun for Ferryman, Blessing aided and abetted Ferryman as he continued to have, carry, and use the shotgun in Clark County. Blessing knew that Ferryman had been committed to a mental institution and that he had been found by a court to be a mentally ill person subject to hospitalization; these facts rendered Ferryman ineligible to have a firearm.

{¶ 3}     Ferryman subsequently used the shotgun to kill Clark County Deputy Sheriff Suzanne Waughtel Hopper and to wound German Township Police Officer Jeremy Blum. Blessing then repeatedly lied to investigators, telling them that the shotgun had been purchased by Ferryman at a garage sale. She did so in an attempt to prevent authorities from discovering that her father had actually purchased the shotgun for Ferryman.

{¶ 4}     Blessing was charged with two counts of obstructing justice and one count of complicity to having weapons while under disability. On May 2, 2011, Blessing filed a request for discovery. A week later, the trial court scheduled the pre-trial conference for June 1, 2011, and the trial for June 27, 2011.

{¶ 5} On May 18, 2011, Blessing moved for a continuance of both the pre-trial and trial dates. Her counsel indicated that he had previously-scheduled hearings in domestic relations court and probate court in other counties at those times. The trial court denied the motion.

{¶ 6} On June 1, Blessing filed an amended motion for a continuance of the trial. Counsel indicated that he was provided discovery by the State on May 23; the discovery consisted of "approximately seven hundred printed pages of documents and additionally what has been represented to be many thousands of pages of documents contained on 10 CD-R discs." Counsel stated that it would take several weeks to review that volume of discovery and that significant time would be required to conduct an appropriate investigation in the case and to prepare any necessary pre-trial motions. Counsel further indicated that he was responsible for more than 40 active cases and that "it is a virtual impossibility that the undersigned can be prepared for trial as currently scheduled."

{¶ 7} The State filed a response to Blessing's motion, indicating that it had no objection to continuing the trial date. The State noted that it had provided the entire file of the shooting to defense counsel, which was "an extremely large file." It further stated that Blessing had posted bail and was not incarcerated for purposes of counting speedy trial time.

{¶ 8} The trial court summarily denied Blessing's amended motion for a continuance.

{¶ 9} On June 27, 2011, the scheduled trial date, Blessing entered a guilty plea to one count of obstructing justice and one count of complicity to having weapons while under disability. In exchange for the plea, the State agreed (1) to dismiss the second charge of obstructing justice, (2) that any prison sentence would run concurrently, and (3) that

Blessing's bond would remain in effect until sentencing. After a Crim.R. 11 hearing, the court accepted Blessing's guilty plea and ordered a pre-sentence investigation.

{¶ 10} Blessing was sentenced on July 18, 2011. After hearing the arguments of defense counsel and the prosecutor, the court imposed a maximum five-year sentence for complicity to having weapons while under disability and a maximum one-year sentence for obstructing justice, to run concurrently. The court also ordered Blessing to pay court costs.

{¶ 11} Blessing appeals from her conviction, raising five assignments of error.

II.

{¶ 12} Blessing's first assignment of error states:

APPELLANT'S GUILTY PLEA WAS NOT MADE KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY, DUE TO VIOLATIONS OF HER DUE PROCESS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.

{¶ 13} In her first assignment of error, Blessing claims that her guilty plea was not entered knowingly, intelligently, and voluntarily, because it was the product of the trial court's failure to grant a reasonable continuance and of trial counsel's ineffective assistance.

{¶ 14} A plea of guilty is a complete admission of guilt. *E.g., State v. Wheeler*, 2d Dist. Montgomery No. 24112, 2011-Ohio-3423, ¶ 3; *State v. Barrett,* 2d Dist. Montgomery No. 24150, 2011-Ohio-2303, ¶ 3; Crim.R. 11(B)(1). Consequently, a guilty plea waives all appealable errors that may have occurred in the trial court, unless such errors precluded the defendant from knowingly, intelligently, and voluntarily entering a guilty plea. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the

syllabus; *Wheeler* at ¶ 3; *State v. Smith*, 2d Dist. Clark No. 08 CA 60, 2009-Ohio-5048, ¶ 13.

{¶ 15}   In determining whether to accept a defendant's guilty plea, the trial court must determine whether the defendant knowingly, intelligently, and voluntarily entered the plea.   *State v. Johnson*, 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988), syllabus.   "If a defendant's guilty plea is not knowing and voluntary, it has been obtained in violation of due process and is void."   *State v. Brown*, 2d Dist. Montgomery Nos. 24520 & 24705, 2012-Ohio-199, ¶ 13, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).   In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C).   *Brown* at ¶ 13.

{¶ 16}   Crim.R. 11(C)(2) requires the court to (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty [or no contest] and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against her, to have compulsory process for obtaining witnesses, and to require the State to prove her guilt beyond a reasonable doubt at a trial at which she cannot be compelled to testify against herself.   *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3. *See also State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 27.

{¶ 17}   The Supreme Court of Ohio has urged trial courts to literally comply with

Crim.R. 11. *Clark* at ¶ 29. However, because Crim.R. 1 1(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g.*, *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights [she] is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 18} Furthermore, when non-constitutional rights are at issue, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15. Where the trial court completely fails to comply with Crim.R. 11(C)(2)(a) or (b), however, "an analysis of prejudice" is not implicated. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

{¶ 19} Blessing does not claim that the trial court failed to comply with Crim.R. 11, and the record reflects that the trial court followed the mandates of that rule. Of particular relevance here, the trial court asked Blessing if she had reviewed the written plea document with her attorney, if she understood it, and whether she was pleading guilty voluntarily. Blessing responded affirmative to each of these questions. Blessing further told the court that, other than the plea agreement described by the State, there had not been any other promises made to her to get her to enter the plea and no one had threatened her to get her to plead guilty. After being informed of her constitutional rights, Blessing indicated that she

wanted to waive those rights and plead guilty to counts two and three, the complicity and obstructing justice charges. On its face, Blessing's plea hearing reflects that Blessing's plea was given knowingly, intelligently, and voluntarily.

{¶ 20} Blessing argues that due process rights were violated by the trial court's failure to grant her a continuance and by her counsel's alleged ineffective performance that resulted therefrom. Blessing states that she pled guilty because she was "backed into a corner."

{¶ 21} The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial judge, which will not be reversed absent an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). An abuse of discretion requires a finding that the decision was unreasonable, arbitrary, or unconscionable. *State v. Anderson*, 2d Dist. Montgomery No. 24657, 2012-Ohio-957, ¶ 6. Although we question the trial court's denial of Blessing's amended motion for a continuance, given the "extremely large" amount of discovery and the State's agreement to the continuance, Blessing's guilty plea precludes her from challenging the trial court's denial of that motion.

{¶ 22} Moreover, we cannot conclude, based on the record before us, that Blessing's counsel rendered ineffective assistance in advising Blessing to enter a guilty plea. Although Blessing's counsel indicated in his amended motion for a continuance that it would be a "virtual impossibility" to review all of the State's discovery prior to trial, the record does not reflect how much discovery counsel was actually able to review by June 27, whether counsel believed he was adequately prepared to proceed with the trial, and whether Blessing's decision to enter a plea was influenced by the denial of the amended motion for a

continuance. Without support in the record that, on June 27, Blessing's counsel could not have effectively represented Blessing at trial and that Blessing's plea was the result of counsel's lack of preparedness, we cannot find that Blessing's plea was involuntarily given or that counsel was ineffective.

{¶ 23}  Blessing's first assignment of error is overruled.

III.

{¶ 24}   Blessing's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO A MAXIMUM PRISON SENTENCE.

{¶ 25}  In her second assignment of error, Blessing claims that the trial court's imposition of maximum sentences was an abuse of discretion.  She further argues that the trial court failed to consider the seriousness and recidivism factors under R.C. 2929.12.

{¶ 26}   We review a felony sentence using a two-step procedure.  *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 4.  "The first step is to 'examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.'"  *State v. Stevens*, 179 Ohio App.3d 97, 2008-Ohio-5775, 900 N.E.2d 1037, ¶ 4 (2d Dist.), quoting *Kalish* at ¶ 4.  "If this step is satisfied, the second step requires that the trial court's decision be 'reviewed under an abuse-of-discretion standard.'"  *Id.*

{¶ 27}   The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences.  *See State v. Foster*, 109

Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus. However, the trial court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37. The trial court is required to merge allied offenses of similar import before imposing sentence under R.C. 2941.25(A), *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, and to properly impose any other penalties required by law. *E.g., State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509 (driver's license suspension); *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332 (post-release control).

{¶ 28} Blessing committed obstructing justice, a fifth-degree felony, and conspiracy to having weapons while under disability, a third-degree felony. The trial court's sentences of one year and five years, respectively, were within the sentencing ranges for those offenses at the time she was sentenced.[1]

{¶ 29} Blessing argues that the trial court did not state at sentencing that it had considered the seriousness and recidivism factors of R.C. 2929.12. (The court did indicate that it had considered the purposes and principles set forth in R.C. 2929.11.) The trial court did not have to make any specific findings to demonstrate its consideration of R.C. 2929.11 and R.C. 2929.12. *Foster* at ¶ 42; *State v. Wagner*, 2d Dist. Clark No. 2011 CA

---

[1]Under 2011 Am.Sub.H.B. No. 86, the legislature created a two-tiered sentencing structure for third-degree felonies. Had Blessing been sentenced under H.B. 86, the maximum possible sentence for complicity to having weapons while under disability would have been 36 months. Because Blessing was sentenced prior to September 30, 2011, the effective date of H.B. 86, that amendment to R.C. 2929.14 does not apply to her. We also have no way of knowing when any sentencing would have taken place had the trial been continued and had the defendant been convicted.

27, 2012-Ohio-2791, ¶ 10. Where the record is silent, a presumption exists that the trial court has considered the factors contained in R.C. 2929.12. *State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988), paragraph three of the syllabus. Further, where the defendant's sentence is within the statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory mitigating factors. *State v. Cemino*, 2d Dist. Montgomery No. 24442, 2011-Ohio-5690, ¶ 6. The appellant has an affirmative duty to show otherwise. *Id*.

{¶ 30} The trial court did not expressly state at sentencing that it had considered the seriousness and recidivism factors. However, the court told the parties that it had considered the presentence investigation report, which included information relevant to those factors. The judgment entry further states that the court balanced the seriousness and recidivism factors of R.C. 2929.12. Based on the record, we find no basis to conclude that the trial court failed to consider the statutory factors contained in R.C. 2929.12. Blessing's sentences were not contrary law.

{¶ 31} Blessing claims that the sentences were an abuse of discretion because she was a first-time offender, she expressed remorse, and it was unlikely that she would commit further offenses. In the context of felony sentencing, an abuse of discretion may be found if the sentencing court unreasonably or arbitrarily weighs the statutory factors. *State v. Bailey*, 2d Dist. Clark No. 2011CA40, 2012-Ohio-1569, ¶ 15, citing *State v. Saunders*, 2d Dist. Greene No. 2009 CA 82, 2011-Ohio-391, ¶ 15.

{¶ 32} Blessing was 56 years old at the time of the offenses; she had no prior convictions. Her counsel argued at sentencing that she was a devout Christian, that she felt

"genuine and sincere remorse," and that there was little likelihood of her repeating the offense. (Blessing's long-time boyfriend, Ferryman, was killed in the encounter with police officers.) Counsel stated that Blessing "did abide by the presence of hunting weapons in the home," but she "never in her wildest imagination ever thought that Michael Ferryman would do what he did with those weapons."

{¶ 33} The prosecutor painted a different picture of Blessing. He emphasized that Blessing was aware that Ferryman engaged in similar behavior in the past. In 2001, Blessing was present in the same trailer when Ferryman shot at law enforcement officers in Morgan County, Ohio. The prosecutor stated that Blessing faced charges from that incident, but the charges were dismissed due to a speedy trial violation. The prosecutor further argued that Blessing knew that Ferryman was a mentally ill person subject to hospitalization and that Ferryman had received a conditional release, subject to supervision. Blessing also knew, in December 2010, that Ferryman was no longer taking his medication and his mental health condition was "slipping." The prosecutor told the trial court that Blessing then repeatedly lied regarding how Ferryman had obtained the gun that he used to kill Deputy Hopper. The prosecutor pointed out "mistruths" in Blessing's statement to the probation office, including that she had seen no change in Ferryman's behavior before the shooting, that Ferryman was a sweet and loving man who was never mean and hateful, and that she "can't fathom what he did."

{¶ 34} The trial court did not express its reasons for imposing maximum sentences. Nevertheless, upon review of the record, we cannot conclude that the trial court abused its discretion when it imposed the maximum sentences for obstructing justice and complicity to

having weapons while under disability.

{¶ 35} Blessing's second assignment of error is overruled.

IV.

{¶ 36} Blessing's third assignment of error states:

THE TRIAL COURT ERRED BY FAILING TO NOTIFY APPELLANT OF POSSIBLE POST-RELEASE CONTROL AND THE POTENTIAL PUNISHMENTS FOR ITS VIOLATION.

{¶ 37} Blessing claims that the trial court failed to inform her at sentencing that she was subject to post-release control and to potential punishments for violating post-release control.

{¶ 38} R.C. 2967.28 provides that felony prison sentences are subject to post-release control, either mandatory or discretionary, based on the nature and degree of the offense. R.C. 2967.28(B) and (C). Based on her offenses, Blessing was subject to a discretionary three years of post-release control.

{¶ 39} Where post-release control may be required under R.C. 2967.28, the trial court must notify the defendant at sentencing of the post-release control requirement and the consequences if the defendant violates post-release control. R.C. 2929.19; *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 18. "[A] judge must conform to the General Assembly's mandate in imposing post-release control sanctions as part of a criminal sentence." *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 23.

{¶ 40} The trial court informed Blessing at her plea hearing that, if she were sentenced to prison, she could be placed on post-release control for three years, at the

discretion of the parole board. The court further told her of the consequences if she violated post-release control. Consistent with that notification, the court's judgment entry states: "The Court notified the defendant at the time of her guilty plea that post-release control (PRC) is optional in this case for up to three years. The defendant is Ordered to serve as part of this sentence any PRC imposed upon her by the Ohio Parole Authority." The judgment entry also includes a paragraph detailing the possible sanctions if Blessing violated post-release control. However, the trial court did not inform Blessing of her possible post-release control sanction or the consequences of violating any post-release control at her sentencing.

**{¶ 41}** The State concedes that the trial court erred in failing to properly notify Blessing regarding post-release control at sentencing. We agree. Although the trial court discussed post-release control during the plea hearing, it failed to address post-release control during the sentencing hearing as required by R.C. 2929.19(B). *State v. Neff*, 2d Dist. Clark No. 2012-CA-31, 2012-Ohio-6047, ¶ 6. The portion of the judgment entry imposing post-release control must be reversed, and the case must be remanded for the proper imposition of post-release control.

**{¶ 42}** The third assignment of error is sustained.

V.

**{¶ 43}** Blessings fourth assignment of error states:

THE TRIAL COURT ERRED BY FAILING TO GIVE ITS REASONS FOR
DISAPPROVING SHOCK INCARCERATION AND INTENSIVE
PROGRAM PRISON AT SENTENCING.

**{¶ 44}** In her fourth assignment of error, Blessing claims that the trial court erred in failing to state its reasons for disapproving shock incarceration and intensive program prison. It appears that Blessing is statutorily eligible for shock incarceration and intensive program prison, and the State has not argued otherwise. *See* R.C. 5120.032(B)(2) (defining eligible offenders for intensive program prison); R.C. 5120.031 (defining eligible offenders for shock incarceration).

**{¶ 45}** The trial court did not mention shock incarceration or intensive program prison at sentencing, and it made no findings upon imposing Blessing's sentence. However, in a footnote in the judgment entry, the trial court stated: "In the interest of justice and truth in sentencing, it is hereby Ordered that the defendant serve her entire stated prison term in the Ohio State Penitentiary. The Ohio Department of Corrections shall not place this defendant in an IPP (Intensive Prison Program), transitional control, a half-way house, or any other program or institution unless this Court, upon reconsideration, expressly and in writing authorizes the same."

**{¶ 46}** R.C. 2929.19(D) provides:

The sentencing court * * * may recommend placement of the offender in a program of shock incarceration under section 5120.031 of the Revised Code or an intensive program prison under section 5120.032 of the Revised Code, disapprove placement of the offender in a program or prison of that nature, or make no recommendation. If the court recommends or disapproves placement, it shall make a finding that gives its reasons for its recommendation or disapproval.

{¶ 47}   "R.C. 2929.19(D) requires more than that reasons can be found in the record to support the trial court's disapproval of the programs; the statute requires that the trial court, if it shall make a recommendation, must 'make a finding that gives its reasons for its recommendation or disapproval.'   This statutory requirement, imposed on the trial court, is not satisfied by an appellate court finding in the record reasons that the trial court could have given, or might have given, for disapproval." *State v. Allender*, 2d Dist. Montgomery No. 24864, 2012-Ohio-2963, ¶ 22.   "The statute requires that the trial court provide its reasons for disapproving shock incarceration or the intensive program prison, not merely that the record supports reasons for disapproval that the trial court might have had, but did not express." *Id.* at ¶ 26.

{¶ 48}   Because the trial court failed to provide any reasons for its disapproval of shock incarceration or the intensive program prison, the trial court's disapproval of shock incarceration and intensive program prison must be reversed, and Blessing must be resentenced on this issue.

{¶ 49}   Blessing's assignment of error is sustained.

VI.

{¶ 50}   Blessing's fifth assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING THE COSTS OF PROSECUTION AND ANY FEES PERMITTED UNDER LAW AGAINST APPELLANT, BECAUSE IT DID NOT IMPOSE THOSE COSTS IN OPEN COURT AND FAILED TO NOTIFY APPELLANT AS REQUIRED UNDER R.C. 2947.23(A)(1)(a)

AND (b).

{¶ 51} Blessing's fifth assignment of error claims that the trial court failed to impose costs in open court and failed to provide the notices required by R.C. 2947.23(A)(1)(a) and (b).

{¶ 52} Under R.C. 2947.23, a trial court is required to impose "the costs of prosecution" against all convicted defendants, even those who are indigent. *See State v. White,* 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. The Ohio Supreme Court made clear that the trial court must orally notify a defendant at sentencing that the court is imposing court costs. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 22, citing Crim.R. 43(A) (a defendant must be present at every stage of his or her trial, including sentencing). A trial court may waive the payment of costs, but an indigent defendant must move for such waiver at sentencing. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 11-12.

{¶ 53} Court costs, which are governed by R.C. 2947.23, are not financial sanctions. *State v. Smith*, 3d Dist. Allen No. 1-07-32, 2007-Ohio-6552, ¶ 11. Consequently, R.C. 2929.19 is inapplicable to court costs, and the trial court need not consider a defendant's ability to pay under R.C. 2929.19 prior to imposing such costs. *E.g, id.; Columbus v. Kiner*, 10th Dist. Franklin No. 11AP-543, 2011-Ohio-6462. "[A]lthough costs in criminal cases are assessed at sentencing and are included in the sentencing entry, costs are not punishment, but are more akin to a civil judgment for money." *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 15.

{¶ 54} A trial court is required to notify the defendant of the consequences for

failing to pay court costs. R.C. 2947.23(A)(1). Specifically, the court must inform the defendant:

(a) If the defendant fails to pay that judgment [for costs] or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule [and]

(b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

{¶ 55}   In this case, the trial court briefly mentioned costs at the conclusion of the sentencing hearing. After informing Blessing of the two sentences it was imposing, the court stated: "Pursuant to the plea agreement, those sentences will run concurrently for a total sentence of five years in the Ohio State Penitentiary and court costs. That will be all for today." The court's subsequent judgment entry read: "Defendant is ORDERED to pay all costs of prosecution, Court appointed counsel costs, and any fees permitted pursuant to law." Although the trial court's reference to court costs at sentencing was cursory, we find it was sufficient to notify Blessing that she would be required to pay such costs and to provide her an opportunity to object.

{¶ 56}   We agree with Blessing, however, that the trial court erred in failing to

notify her that she could be required to perform community service if she failed to pay those costs. The State also concedes that the trial court erred in its "imposition of fines and costs."

{¶ 57} In prior cases addressing the notification issue, we have remanded to the trial court for the court to modify its judgment entry to reflect that the defendant could not be required to perform community service if the defendant failed to pay court costs. *State v. Henderson*, 2d Dist. Montgomery No. 24701, 2012-Ohio-3283; *State v. Lux*, 2d Dist. Miami No. 2010 CA 30, 2012-Ohio-112. In those cases, however, the defendant either could not be resentenced or resentencing for notification regarding community service would be superfluous. *Lux* at ¶ 59 (defendant had served sentence and could not be resentenced); *Henderson* at ¶ (remanding for modification of judgment entry to eliminate the possibility of community service where the State agreed to that remedy for defendant, who was serving sentence of life in prison without the possibility of parole plus 15 years). The proper remedy in this case is to remand for resentencing regarding costs so that the court can provide the notification required by R.C. 2947.23(A)(1)(a) and (b). *See, e..g., State v. Huber*, 8th Dist. Cuyahoga No. 98206, 2012-Ohio-6139, ¶ 33; *State v. Dillard*, 1st Dist. Hamilton No. C-120058, 2012-Ohio-4018, ¶ 9; *State v. Debruce*, 9th Dist. Summit No. 25574, 2012-Ohio-454, ¶ 38; *State v. Taylor*, 11th Dist. Portage No. 2011-P-0090, 2012-Ohio-3890, ¶ 43.

{¶ 58} Blessing's assignment of error is sustained in part and overruled in part.

VII.

{¶ 59} In light of our disposition of Blessing's assignments of error, the trial court's judgment will be affirmed in part, reversed in part, and remanded for further proceedings.

Specifically, the portions of the judgment entry that disapprove of shock incarceration and an intensive program prison and that impose post-release control and costs are reversed. The matter is remanded to the trial court for the proper imposition of post-release control, to state its reasons for disapproving shock incarceration and intensive program prison, and for proper notification pursuant to R.C. 2947.23(A)(1)(a) and (b) regarding the costs associated with the case. In all other respects, the trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, P.J. and DONOVAN, J., concur.

Copies mailed to:

Lisa M. Fannin
Mark A. Deters
Hon. Douglas M. Rastatter